IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–02889–WYD–KMT

ANDREW L. McCARGO,

    Plaintiff,

v.

TEXAS ROADHOUSE, INC., a Delaware corporation,

    Defendant.

## ORDER

This matter is before the court on "Plaintiff's Motion to Allow Contact with Witnesses" [Doc. No. 120, filed November 9, 2010] ("Mot"). Defendant Texas Roadhouse, Inc. a/k/a Texas Roadhouse Management Corp. ("TXRH") filed its "Response to Plaintiff's Motion to Allow Contact with Witnesses" [Doc. No. 126] ("Resp.") on November 30, 2010, and Plaintiff filed a series of Affidavits on December 1, 2010 [Doc. No. 127] supporting Plaintiff's position. On December 2, 2010 a hearing on the Motion was held and the court heard oral presentations from counsel.

On December 9, 2010, consistent with the court's order at the hearing, TXRH filed its "Supplemental Response to Plaintiff's Motion to Allow Contact with Employee Witnesses" [Doc. No. 130] ("Supp. Resp."). Plaintiff filed his "Plaintiff's Reply to the Defendant's Supplemental Response to Plaintiff's Motion to Allow Contact with Employee Witnesses (Doc

#130)" on December 16, 2010 [Doc. No. 132] ("Supp. Reply"), and TXRH filed its "Second Supplemental Response to Plaintiff's Motion to Allow Contact with Employee Witnesses" ("2d. Supp. Resp."). [Doc. No. 136, filed December 22, 2010.] The matter is now ripe for review and ruling.

### A. Analysis

The dispute at issue in this case arose when Plaintiff's attorney attempted to contact current employees of TXRH and was told that the law firm of Senter, Goldbarb & Rice, L.L.C. ("Senter Goldfarb") represented each and every current employee[1] in addition to the company. (Mot. at 1-2.) Obviously, if an employee was individually represented by TXRH's counsel, Plaintiff's attorney would be prohibited from independently contacting that employee by Colorado Rule of Professional Conduct 4.2. Defendant argued that independent questioning of current employees by Plaintiff's counsel might lead to employees speaking about information that was covered by the attorney-client privilege and therefore forbade the interviews. (Resp. at 4.)

Relying on the Ethics Committee of the Colorado Bar Association's Ethics Opinion No. 120 dated May 17, 2008, Plaintiff argued that such a "blanket" assertion of representation was improper. (Mot. at 2-3.) Ethics Opinion 120 provides generally that "it is improper for a lawyer who represents an organization to assert that he or she represents some or all of the constituents

---

[1] Customarily representation of the company would extend only to the managerial or supervisory employees.

of the organization unless the lawyer reasonably believes he or she has in fact been engaged by the constituent or constituents." Colo. Ethics Op. 120, syllabus at 1.

Prior to the issue of "blanket" representation being raised by Plaintiff, TXRH admits that "every time an employee (whether current or former) was deposed by Plaintiff's counsel, [Senter Goldfarb] offered its representation, which these witnesses accepted." (Resp. at 3.) Senter Goldfarb's representation was even extended to the former employees who were the alleged wrongdoers in the fire incident which precipitated this action and who were terminated by TXRH as a result of their activities on November 23, 2009. (*Id*.)

Senter Goldfarb initially argued it had a reasonable belief that it represented every current employee at the Colorado Springs restaurant based, in part, on a "roster" which had been posted at the location. (Resp., Ex. D.) On the roster, employees could affix their signature, agreeing that "[b]y signing this sheet, I hereby agree to allow Senter Goldfarb & Rice, LLC, to represent me for the purposes of the case, *Andrew McCargo v. Texas Roadhouse Management Corporation.*" (*Id*.) (italics in original).[2]

At the hearing on December 2, 2010, this court prefaced its inquiry of counsel with the observation that the Colorado Supreme Court has clearly stated, "[t]he [attorney-client] relationship is sufficiently established when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions." *People v. Morley*, 725 P.2d 510, 517 (Colo. 1986) (emphasis added.) The court then inquired of

---

[2] Observing the manner in which the case caption was italicized on the roster, the court infers that the roster heading was originally drafted by a lawyer.

Defendant's counsel as to each and every employee at TXRH Colorado Springs: why the employee needed an attorney to individually represent him/her in this case; whether the employee had contacted the law firm or if the contact (if any) was originated by the law firm; whether the employee was advised of Senter Goldfarb's potential conflict of interest; and, other questions designed to elicit whether a *bona fide* attorney-client relationship existed between Senter Goldfarb and individual employees of the Colorado Springs TXRH location. After some discussion, counsel for the defendant agreed to make further inquiry of individual employees to address the court's questions about the true nature of the alleged representation. *See Morley*, 725 P.2d at 517 (finding the relationship of attorney and client can be inferred from the conduct of the parties). At the conclusion of the hearing, the court ordered counsel for TXRH to

> file a statement compliant with the Colorado Rules of Professional Conduct, Advisory Op. 120, identifying every employee believed to have entered into an individual representation agreement with the law firm concerning the matters at issue in this case, together with all facts supporting that such an attorney-client relationship exists with the individual employee. The supporting documentation should include precisely why the individual employee believes they need the representation of an attorney in this matter, how the employee actually came to the law firm, the precise concerns of the individual employee leading him/her to need an attorney and whether or not the law firm explained the potential conflict of interest to the employee and obtained a written consent of both the company and the employee to waive the potential conflict.

(Minutes, December 2, 2010 [Doc. No. 129].)

Thereafter, the Defendant filed its Supplemental Response analyzing the nature of the previously alleged attorney-client relationship as to only those employees originally signing the

roster.[3] The defendant concluded that, with the exception of those employees who had been deposed and represented at their depositions by Senter Goldfarb, including Aaron Boyle, Curtis Owens and Josh Wallace, and the supervisory employees, including Dee Shaughnessy, Steve Miller, Tom Skipworth, Kris Brocious, and Chad Simpson, Senter Goldfarb was now only claiming an attorney-client relationship with two additional employees, Aaryn Cunha and Aimee Caratini. (Supp. Resp. at 7.) It does not escape the court's notice that both Mr. Cunha and Ms. Caratini were on duty on November 23, 2009, and therefore conceivably actually possess relevant information as to the underlying facts of the case.

Other than the employees named above, Defendant has withdrawn its claim that Senter Goldfarb has an attorney-client relationship with any other TXRH Colorado Springs employee and agreed that Plaintiff is free to contact any other employee of the Colorado Springs TXRH, whether past or present. (Supp. Resp. at 1-6.)

### B.     Findings

Defendant represents to the court that Aaryn Cunha has requested legal representation in this case because, "Mr. Cunha was working in the kitchen on the night of the paper-lighting incident and worked in the kitchen area with Plaintiff and may be one of the unnamed employees who have been accused of racially discriminatory conduct towards Plaintiff. As such, Mr. Cunha believes that legal representation is necessary to protect his interests." (Supp. Resp. at 3.) As to

---

[3] The roster did not, apparently, contain the names of every TXRH Colorado Springs employee, although Senter Goldbarb originally argued it represented even employees who had not signed the roster.

5

Aimee Caratini, the defendant represents, "Ms. Caratini was working on the evening of the paper-lighting incident and had interactions with Mr. McCargo. As such, she would like to have representation as an eyewitness to some events." (*Id*.)

Because counsel for TXRH, Sonja S. McKenzie and Courtney B. Kramer, are attorneys and officers of this Court, the Court is entitled to rely on the veracity of their statements. *Bayview Loan Servicing, LLC v. Boland*, Case No. 08-cv-00566-WDM-KLM, 2010 WL 4237796, 2 (D. Colo. August 26, 2010); *Selsor v. Kaiser*, 81 F.3d 1492, 1501 (10th Cir.1996). The attorneys for the defendant have "represent[ed] that they have personally met with [Cunha and Caratini] and that both of these current employees requested dual legal representation consistent with the Court's requirements of December 2, 2010." (2d. Supp. Resp. at 4.) There is no evidence before the court which contradicts this representation. The court finds that pursuant to *Morley*, 725 P. 2d at 517, counsel for TXRH has provided the court with adequate information to establish an attorney-client relationship between Senter Goldfarb and Aaryn Cunha and Aimee Caratini.

Further, whether there is a conflict of interest between Senter Goldfarb's representation of TXRH and Mr. Cunha and/or Ms. Caratini is a determination that Senter Goldfarb attorneys must make themselves in light of the court's advisements on December 2, 2010. The court will not postulate that counsel is ignoring these responsibilities; in fact, the court is confident that counsel fully understand their obligations in this regard. TXRH's attorneys have advised the court that to the extent they believed advisements to be necessary, they have so advised Mr. Cunha and Ms. Caratini of any conflict. (Supp. Resp. at 7.) The court will accept these

representations at face value.  Therefore, there is no need for an evidentiary hearing as to the representation of these two current TXRH employees.

Further, the court finds there is no dispute as to Senter Goldfarb's representation of management and supervisory employees as set forth *infra*, nor to employees previously deposed.

### C.    *Sanctions*

The Plaintiff has requested sanctions in this matter for Defendant's counsel's "falsely representing to the Court that she represented 97 individuals whom she never represented." (Reply at 8.)  Plaintiff claims that "[c]ounsel succeeded in interfering with Plaintiff's investigation by blocking access to 97 individuals for five weeks when no attorney-client relationship existed." (*Id.*)

The court finds that some disruption was caused to Plaintiff's ability to interview witnesses by the unjustified blanket claim of representation by Senter Goldfarb of all TXRH Colorado Springs employees.  Therefore, as a sanction, the court will allow <u>Plaintiff only</u> an additional thirty days from the date of this order to conduct whatever interviews it deems necessary with respect to current employees and, additionally, will allow the Plaintiff to schedule and take the depositions of Aaryn Cunha and Aimee Caratini, to the extent Plaintiff desires to do so.  The Plaintiff may take the two depositions without regard to any prior limitation on the number of depositions allowed per side in the governing Scheduling Order, as amended. Defendant will cooperate fully in scheduling the depositions of Mr. Cunha and Ms. Caratini during the thirty day period.  Discovery will not be continued for any other purpose.

No further sanctions will be awarded.

It is therefore **ORDERED**

1. "Plaintiff's Motion to Allow Contact with Witnesses" [Doc. No. 120] is **GRANTED** as set forth more fully herein;

2. Plaintiff will be allowed additional discovery as described herein for a period of thirty days from the date of this Order; and

3. The Final Pretrial Conference now scheduled for February 7, 2011 is **VACATED** and **re-set for February 28, 2011 at 9:45 a.m.** The proposed Final Pretrial Order shall be filed no later than **February 21, 2011.**

Dated this 12th day of January, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge