IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02889-WYD-KMT

ANDREW L. McCARGO,

 Plaintiff,

v.

TEXAS ROADHOUSE, Inc.,
a Delaware Corporation

 Defendant.

---

**ORDER**

---

I. <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment filed November 1, 2010.  A response in opposition to the motion was filed on January 19, 2011, and a reply brief was filed on February 7, 2011.  For the reasons stated below, the motion for summary judgment is denied in part and granted in part.

II. <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm'n. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must view

the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III.     BACKGROUND

Plaintiff, Andrew McCargo, was employed as an expo cook at Defendant's restaurant, Texas Roadhouse ("TXRH"), from October 21 through December 22, 2009. (Final Pretrial Order, ECF No. 158, Stipulations, ¶ 2.) Plaintiff first applied for a position with the restaurant in early October but did not obtain an interview until three weeks later after his wife – who "does not sound 'African American'" – called and scheduled an interview for him. (Am. Compl., ECF No. 61, ¶¶ 12, 15.) While employed at TXRH, Plaintiff, an African American male, continually heard coworkers use the words "nigger" and "nigga." (Am Compl., ECF No. 61, ¶ 24; Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 36-37.) In addition, Plaintiff was referred to as "boy" on multiple occasions by coworkers. (Am. Compl., ECF No. 61, ¶ 24; Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 38.)

On November 23, 2009, Plaintiff's coworkers played a series of "pranks" on him, first lighting a piece of paper attached to Plaintiff's clothing on fire, and then tying a tea bag to the back of Plaintiff's apron. (Am Compl., ECF No. 61, ¶¶ 27-29.) While this was occurring, one of the kitchen workers shouted to Plaintiff, "Damn nigga, you on fire. Don't let the white man get you down." (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 39.) These events humiliated Plaintiff and he reported them to both TXRH

management and the local police. (Am Compl., ECF No. 61, ¶¶ 30-31, 34.) Defendant responded to the report by launching an investigation which culminated in the termination of three TXRH employees. (Def.'s Mot. for Summ. J., ECF No. 113, at 19-20.)

In the matter before me, Plaintiff asserts race discrimination claims against TXRH pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff brings claims of a hostile work environment, constructive discharge, and discriminatory conduct in the hiring process. Plaintiff seeks relief in the form of front pay in lieu of reinstatement; non-pecuniary and compensatory damages, including damages for humiliation, emotional distress, and consequential damages; punitive damages; pre- and post-judgment interest; costs and reasonable attorneys' fees; and all other available legal and equitable relief. (Am. Compl., ECF No. 61, Prayer for Relief, at 9.)

IV.   ANALYSIS

   A.   Hostile Work Environment Claim

Plaintiff alleges that during his tenure at TXRH, he was subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 35-40.) Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1982). "Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII." *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000). To demonstrate a racially hostile environment, "it

must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, . . . and (2) the harassment was racial or stemmed from racial animus. General harassment if not racial or sexual [in nature] is not actionable." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citing *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 67 (1986)).

### 1. Pervasiveness & Severity

In connection with a claim of hostile work environment, "[s]everity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Robinson v. Cavalry Portfolio Services, L.L.C.*, 365 Fed. Appx. 104, 118 (10th Cir. 2010) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). In order to demonstrate a hostile work environment, "[t]he plaintiff must show 'more than a few isolated incidents of racial enmity.' . . . Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 550 (internal citations omitted). However, "[w]hile there is no 'magic number' of slurs that indicate a hostile work environment, we have recognized before that an unambiguously racial epithet falls on the 'more severe' end of the spectrum." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002).

During the brief period that Plaintiff worked at TXRH, employees of the restaurant continually used the words "nigga" and "nigger" in Plaintiff's presence, two employees

-4-

repeatedly addressed Plaintiff as "boy," a piece of paper attached to Plaintiff's clothing was set on fire by a coworker while another yelled, "Damn nigga, you on fire," and another coworker attached a tea bag to the back of Plaintiff's apron, a gesture imbued with racial undertones.  Plaintiff worked a total of twenty-three shifts at Defendant's restaurant, during which time he allegedly endured at least twenty-three discriminatory acts.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 41.)  Since this time, Plaintiff has been diagnosed by a licensed clinical psychologist as having suffered a "serious psychological injury as the result of racial harassment."  (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 31-32.)  Given these facts, I find that Plaintiff has asserted sufficient evidence to create an issue of material fact concerning whether he was subjected to a pervasive and severe hostile work environment.[1]

### 2.   Racial Nature of the Harassment

To survive a motion for summary judgment when making a hostile work environment claim, a plaintiff "must . . . produce evidence from which a rational jury could infer that [he or] she was targeted for harassment because of [his or] her gender, race, or national origin."  *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004).  Here, Defendant argues that, "Plaintiff has presented no evidence tending to show that anyone at [TXRH] harbored racial animus toward him."  (Def.'s Mot. for Summ. J., ECF No. 113, at 15).  While it is true that the "'mere utterance of an . . .

---

[1]Further, the Tenth Circuit has indicated that evaluating the pervasiveness and severity of a hostile work environment claim is "particularly unsuited for summary judgment because it is quintessentially a question of fact" best left to the jury.  *Herrera v. Lufkin Indus.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)).

epithet which engenders offensive feelings in a employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII," courts have recognized that "[f]ar more than a mere offensive utterance, the word 'nigger' is pure anathema to African-Americans. *Harris,* 510 U.S. at 21(quoting *Vinson*, 477 U.S. at 67). Perhaps no single act can more quickly . . . create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' . . . ." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). Likewise, the term "boy" can be used in certain contexts as a degrading racial moniker. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1146 (10th Cir. 2008). Consequently, I find that a reasonable jury could find the hostile behavior directed toward Plaintiff to have stemmed from racial animus.

        3.    <u>Notice</u>

In the motion, Defendant also argues that TXRH had neither actual nor constructive notice of the alleged discriminatory activity prior to Plaintiff's filing of an official complaint after the harassment had taken place. (Def.'s Mot. for Summ. J., ECF No. 113, at 18-19.) "An employer will not be liable under Title VII if the employer was not on actual or constructive notice of the alleged harassment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1188 (10th Cir. 2007) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir. 1998)). "For purposes of Title VII, an employer is deemed to be on notice of a hostile work environment if management level employees know about the alleged harassment." *Jessen v. Babbitt*, No. 98-8069, 1999 WL 1246915, at *5 (10th Cir. Dec. 23, 1999). Plaintiff alleges that discriminatory comments were made in the presence of managers, and that managers engaged in the discriminatory conduct. (Pl.'s Resp. 13-15, 21-27.) Thus, I find that whether TXRH had actual or constructive

notice of the discriminatory conduct is a triable issue of fact.

        4.     The *Ellerth/Faragher* Defense

Defendant asserts an affirmative defense to the hostile work environment claim, as set forth in both *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998):

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ellerth*, 524 U.S. at 765; accord *Faragher*, 524 U.S. at 807.[2]

        i.     Whether Defendant took Reasonable Care to Prevent/Correct Harassment

Defendant argues that the response of TXRH management to the November 23, 2009 incident was both prompt and appropriate. (See Def.'s Mot. for Summ. J., ECF No. 113, at 19-20.) TXRH initiated an investigation following the incident that culminated in the termination of three employees: the employee who had lit the piece of paper attached to Plaintiff's clothing on fire, the employee who had attached the tea bag

---

[2] The *Ellerth/Faragher* defense is only available when there has not been a tangible employment action. A "tangible employment action" may include: "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. The only adverse employment action Plaintiff alleges here is a constructive discharge. See *infra* Part III(B). The Tenth Circuit has determined that a constructive discharge does not qualify as a "tangible employment action" vis-à-vis the *Ellerth/Faragher* defense in the absence of an underlying official act. *Chapman v. Carmike Cinemas*, 307 Fed. Appx. 164, 169 (10th Cir. 2009) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 148 (2004)). Since no underlying official act is alleged in this case, there is no tangible employment action that would disqualify Defendant from asserting an *Ellerth/Faragher* defense.

to Plaintiff's apron, and the individual who had uttered the derogatory racial comment during the incident. (*Id.* at 19-20.) Additionally, after receiving Plaintiff's complaint, the TXRH Director of Care and Concern, Dee Shaughnessy, flew out from Kentucky to investigate the incident. (*Id.* at 19.) Despite these remedial steps, Plaintiff alleges that the discriminatory conduct continued and no action was taken against a manager who knew of and tolerated the harassment. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 39, 46.)

Defendant also contends that TXRH had promulgated an effective anti-harassment policy prior to the incident, a copy of which was provided to each employee in the employee handbook, and a separate copy which was posted in the kitchen area of each restaurant. (*Id.* at 17.) "Though the . . . distribution of a valid anti[-]harassment policy provides compelling proof that [the defendant] exercised reasonable care in preventing and promptly correcting . . . harassment, it is not dispositive." *Weger v. City of Ladue*, 500 F.3d 710, 719 (8th Cir. 2007) (quotation marks and citation omitted). Further, if an anti-harassment policy is not effectively enforced, it does not support the *Ellerth/Faragher* defense. See *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 118 (3d Cir. 1999).

Here, Plaintiff has presented evidence challenging the effective enforcement of the harassment policy. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 44.) For instance, Defendant claims that the substance of the policy and the available avenues for reporting harassment were discussed during employee orientation, and that all employees and managers received Equal Employment Opportunity training. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 17-18; Def.'s Reply in Supp. of Mot.

for Summ. J., ECF No. 148, at 40.) Plaintiff, however, presented evidence that several TXRH employees, including Plaintiff, were not given any training on discrimination or harassment. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 6, 44.) In addition, Defendant asserts that TXRH policies require employees to report incidents of harassment or discrimination, but Plaintiff has presented evidence directly challenging this assertion as well. (Def.'s Mot. for Summ. J., ECF No. 113, at 18; Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at16, 46.) Given these discrepancies, I find that whether Defendant exercised reasonable care in preventing or responding to harassment is an issue of material fact to be determined at trial.

      ii. <u>Whether Plaintiff Unreasonably Failed to Utilize Preventative/Corrective Opportunities</u>

Defendant also argues that Plaintiff failed to lodge a timely complaint concerning the majority of the alleged incidents of discrimination "until long after the harassment." (Def.'s Mot. for Summ. J., ECF No. 113, at 20.) However, Plaintiff had only been working for TXRH for one month when the November 23, 2010 events occurred, and he filed an official report of the harassment two days later. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 6, 29.) Thus, I find that whether it was unreasonable for Plaintiff to not have reported the prior incidents of harassment is a question best left to a jury.

   In sum, Plaintiff has drawn attention to factual issues regarding the steps taken by Defendant to prevent and correct discriminatory conduct, as well as the reasonableness of Plaintiff's response to the alleged conduct. Therefore, I find that Defendant is not entitled to summary judgment via the *Faragher/Ellerth* affirmative

defense, and Defendant's motion for summary judgment concerning the hostile work environment claim is denied.

   B. <u>Constructive Discharge Claim</u>

In connection with this claim, Plaintiff alleges that he suffered an adverse employment action in the form of a constructive discharge. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No.144, at 46.) "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Anderson v. Clovis Mun. Sch.*, 265 Fed. Appx. 699, 707 (10th Cir. 2008); accord *Sandoval,* 388 F.3d at 1325. "Title VII encompasses employer liability for a constructive discharge." *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004)). "The plaintiff's burden in a constructive discharge case is substantial . . . because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." *Equal Employment Opportunity Comm'n v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007) (quoting *Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004)). In order to succeed with a claim of constructive discharge, "a plaintiff must show he had no other choice but to quit." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)).

During the first month of Plaintiff's employment with TXRH, he had been subjected to coworkers' continual use of the words "nigga" and "nigger;" had been referred to repeatedly as "boy;" had a piece of paper attached to his clothing intentionally set on fire by a coworker; and had a tea bag attached to the back of his

apron by another. Plaintiff alleges to have endured twenty-three discriminatory acts in as many shifts. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 41.) Despite these allegations, Defendant argues that Plaintiff has not met the high burden of demonstrating a constructive discharge because TXRH terminated the three employees involved in the fire and tea bag incident, and subsequently gave Plaintiff two weeks paid administrative leave. (Def.'s Reply in Supp. of Mot. for Summ. J., ECF No. 148, at 40.) Plaintiff has, however, presented some evidence of continued harassment following the events of November 23, 2009. (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 39, 46.) Accordingly, Plaintiff has created a genuine issue of material fact regarding whether a reasonable person would have continued his employment with Defendant. Thus, as to the claim of constructive discharge, the motion for summary judgment is denied.

### C.    Wage/Hiring Discrimination Claim

Finally, Plaintiff alleges that Defendant engaged in discriminatory hiring practices. (Am. Compl., ECF No. 61, ¶¶ 12-21; Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 47-48.) Plaintiff claims that it took him several visits to the restaurant and corresponding phone calls – including one from his wife, who does not "sound 'African American'" – before he obtained an interview at TXRH. (Am. Compl., ECF No. 61, ¶ 15; Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 47.) Plaintiff further claims that ignoring the applications of African American applicants was part of a "general pattern" of discrimination engaged in by TXRH, but the only support for this assertion provided by the Plaintiff is the affidavit of a former hostess who remarked that she *could not remember* any African Americans being told by managers to come back for interviews.

(Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 47; Pl.'s Ex. 10, ECF No. 144-10, ¶ 12.)  Based on my review of the evidence, I find that neither Plaintiff's personal experience with the TXRH hiring process nor the isolated and unsubstantiated statement by the former employee regarding the lack of interviews offered to African Americans creates a genuine issue of material fact as to this claim.

Plaintiff also alleges that Defendant engaged in wage discrimination as part of the hiring process.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 144, at 47.)  With a claim of wage discrimination under Title VII, a plaintiff must demonstrate that the employer paid higher wages to similarly-situated employees of different races.  See *Mickleson v. New York Life Ins.*, 460 F.3d 1304, 1310 (10th Cir. 2006).  Here, Plaintiff's claim is based on the allegation that he was offered the job at a rate of $7.29 per hour, but when he actually commenced his employment at TXRH, he was paid $4.26 per hour.  (Am. Compl., ECF No. 61, ¶¶ 18-19.)  Importantly, Plaintiff does not dispute that after he complained to a manager about his pay rate, his salary was increased to the previously agreed upon amount, with back pay for the hours already worked at the lower rate.  (Def.'s Mot. for Summ. J., ECF No. 113, at 7.)  Moreover, Defendant has presented evidence that Plaintiff's wages (including tips) during his final pay period averaged $11.14 per hour compared to the average kitchen wage of $10.09.  (Def.'s Mot. for Summ. J., ECF No. 113, at 11.)  Given these facts, I find that Plaintiff has failed to raise any triable issue of fact concerning discrimination in the hiring process, and thus Defendant's motion for summary judgment concerning this claim is granted.

V.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment filed November 1, 2010, is **DENIED** in part and **GRANTED** in part.  The motion is granted as to Plaintiff's claim of hiring and wage discrimination.  The motion is denied in all other respects as set forth in this Order.

Dated:  July 1, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge